UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARGILL INTERNATIONAL S.A.,** | CIVIL ACTION NO: |
| Plaintiff, | |
| vs. | SECTION "___"; DIVISION "___" |
| **SIXTHONE CORPORATION,** *in personam,* and **M/T PYXIS DELTA (IMO NO. 9314909),** Her Engines, Boilers, Tackle, Furniture, Apparel, Appurtenances, etc., *in rem,* | JUDGE MAGISTRATE |
| Defendants. | |

## VERIFIED COMPLAINT

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA:

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Cargill International S.A. ("Cargill"), and for its Verified Complaint against Defendants, Sixthone Corporation ("Sixthone"), *in personam*, and M/T PYXIS DELTA (IMO NO. 9314909) (the "Vessel"), *in rem*, alleges as follows:

### THE PARTIES

1.

Plaintiff Cargill is a corporation duly organized and existing under the laws of Switzerland with its principal place of business at 14 Chemin de Normandie, 1206 Geneva, Switzerland.

2.

*In personam* Defendant Sixthone is a foreign corporation, or other business entity duly organized under the law of the Marshall Islands or some other foreign law, with a principal place of business at Trust Company Complex, Ajetake Road, Ajetake Island, Mujuro, MH 96960, Marshall Islands and was at all times relevant herein the registered owner of the *in rem* Defendant Vessel, a 2006-built, Marshall Islands-flagged chemical / oil products tanker bearing IMO No. 9314909.

## JURISDICTION AND VENUE

3.

This Court has jurisdiction over the subject matter of this action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure because it arises from the breach of a maritime contract. This action also comes within the Court's admiralty and maritime jurisdiction pursuant to U.S. Constitution Article 3, Section 2 and 28 U.S.C. § 1333 and is brought pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions because Cargill seeks the attachment and arrest of the *in rem* Defendant Vessel as security for its claim.

4.

Venue is proper in this Honorable Court because the *in rem* Defendant Vessel presently is situated within the waters of this District.

## FACTUAL BACKGROUND

5.

In September 2015, Cargill and Sixthone entered into a time charter party, subsequently amended by an addendum dated February 24, 2016, whereby Cargill chartered the Vessel from Sixthone for a period of six months, plus an additional six months in Cargill's option (the

"Charter"). The clean fixture recap incorporated a Shelltime 4 form, as well as Cargill's rider clauses, both of which were attached thereto, along with other appendices. A full copy of the Charter and the addendum dated February 24, 2016 is attached hereto as Exhibit "A."

6.

Under the Charter, as amended, Cargill was to pay hire at $19,750 per day or pro rata including overtime for the firm six months, and $18,000 per day or pro rata including overtime for the optional six month period. *See* Exhibit A.

7.

Among other relevant provisions, Clause 55 of the Cargill rider clauses incorporated into the Charter provides:

> **55. Major oil company approvals**
> Owner warrants at the time of delivery, the vessel and her management are approved by major oil companies and will so remain during the currency of this charter. . . .
>
> It is a condition precedent and the Owner warrants that the vessel is not disapproved of by any oil major or oil trading company.
>
> If the vessel during the currency of this charter becomes unacceptable or unapproved by any sub-Charterer, terminal and or receiver and due to this reason loses time or incurs waiting time, all such time to be considered off-hire and expenses incurred in this connection to be for Owner's account. . . .

*See id*. at Cargill Rider Clause 55.

8.

During the term of the Charter, the relevant Classification Society, Det Norske Veritas ("DNV"), issued a Condition of Class as a result of deficiencies with the Vessel's anchor chains.

3

9.

As a result of the deficiencies noted in the DNV Condition of Class and/or for additional deficiencies uncovered during its vetting process, on March 14, 2016, potential sub-charterer and oil major BP rejected the Vessel for a proposed fixture.

10.

Although the failure to be approved by BP during its vetting process represented a breach of the warranty set forth in Clause 55, Cargill sought to mitigate its damages resulting from BP's rejection and was able to sub-charter the Vessel to Valero Marketing and Supply Company ("Valero") for another voyage from Port Arthur to Antwerp.

11.

On April 15, 2016, one day before the Vessel completed cargo operations in Antwerp under the Valero fixture, ExxonMobil rejected the Vessel for a proposed fixture after conducting its vetting process as BP had done a month earlier.

12.

On April 17, 2016, as a direct result of BP's prior rejection of the Vessel, Sixthone completed repairs to the Vessel's deficient anchor chains, and DNV removed the Condition of Class.

13.

On April 18, 2016, BP once again rejected the vessel for another proposed fixture.

14.

It is unknown when, if ever, Sixthone or its representatives contacted BP and/or any other oil majors or oil trading companies as requested, something Sixthone should have done immediately and without being asked upon the lifting of the DNV Condition of Class to ensure the Vessel remained acceptable to all potential sub-charterers as required by Clause 55.

However, Castleton Commodities International ("CCI") and Total SA ("Total") rejected the Vessel on April 19 and 22, 2016, respectively, evidencing a continued violation of Clause 55 by Sixthone.

15.

The Vessel ultimately could not be fixed for another voyage until April 28, 2016, representing a period of 11.664583 days in which time the Vessel was off-hire in accordance with Clause 55.

16.

Cargill put Sixthone on notice that in light of the latter's breach of the warranty set forth in Clause 55, the time during which the Vessel was failing the vetting processes undertaken by oil majors and oil trading companies should be considered an off-hire period. Cargill further demanded security for its claims arising out of Sixthone's breach of Clause 55, which were subject to arbitration in London.

17.

Although Sixthone has admitted BP's vetting department rejected the Vessel as a result of the Condition of Class, and that the period in which the Vessel's anchor chains were repaired was properly considered an off-hire period, Sixthone has otherwise rejected Cargill's position and refused to post security.

**FIRST CAUSE OF ACTION: BREACH OF CHARTER**

18.

Cargill repeats and re-alleges paragraphs 1 through 17 set out hereinabove as though the same were more thoroughly set forth at length herein.

19.

Although Cargill at all times fulfilled its obligations under the Charter, Sixthone failed to fulfill its obligation set forth in Clause 55 of the applicable rider clauses to ensure the Vessel would not be "disapproved of by any oil major or oil trading company" during the term of the Charter.

20.

Through no fault of Cargill's, Sixthone failed to maintain the Vessel in suitable condition to clear the vetting processes of oil majors and oil trading companies BP, Exxon, CCI and Total as required under Clause 55.

21.

Sixthone is liable to Cargill as a result of the aforementioned breach of the Charter. The total amount of damages Cargill has sustained due the breach of Clause 55 is $209,962.50, being the 11.664583 days in which the Vessel was off-hire at the then-applicable $18,000 per day rate of hire, pro rated accordingly. However, for purposes of this claim, Cargill only claims $183,226.60 as a result of other amounts due between the parties under the Charter, as evidenced by the Hire Statement attached hereto as Exhibit "B." (On the Hire Statement the subject off-hire period is described as "OFF HIRE-REPAIRS" from April 17, 2016 at 0345 hours to April 28, 2016 at 1942 hours under the heading "**Gross Hire**." This period, to be clear, begins at the time when the repairs to the anchor chains commenced, after the vessel was already being rejected by oil majors in violation of Clause 55, and ends when the vessel was finally able to be sub-chartered again.)

**ARBITRATION**

22.

Cargill repeats and re-alleges paragraphs 1 through 21 set out hereinabove as though the same were more thoroughly set forth at length herein.

23.

Pursuant to the Charter, "[a]ll disputes or differences arising out of or under this [Charter] that cannot be amicably resolved shall be referred to arbitration in London" under English law pursuant to the terms of the London Maritime Arbitrators' Association. *See* Exhibit A at Cargill Rider Clause 105.

24.

In accordance with 9 U.S.C. § 8, Cargill is entitled to obtain security for its claims described herein by way of a maritime arrest and maritime attachment as more fully set forth below. Cargill reserves the right to arbitrate the merits of the dispute.

**SUPPLEMENTAL RULE B AND C RELIEF**

25.

Cargill repeats and re-alleges paragraphs 1 through 24 set out hereinabove as though the same were more thoroughly set forth at length herein.

26.

The Charter is a maritime contract, the breach of which by Sixthone attaches a maritime lien on the Vessel that is enforceable by a suit *in rem*.  Accordingly, Cargill seeks to enforce its maritime lien pursuant to a Warrant of Arrest to be issued against the Vessel, all in accordance with Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions and Local Admiralty Rule 4.1(B) by way of an arrest of the Vessel.

27.

Plaintiff also seeks jurisdiction over the *in personam* defendant Sixthone, who cannot be found within this District and is believed to have assets in this jurisdiction, namely the Vessel, by attachment of Sixthone's goods and chattels within this District pursuant to a Writ of Foreign Attachment to be issued against the Vessel, requiring Sixthone to answer the allegations detailed above and to provide security for Cargill's claims, all in accordance with Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions and Local Admiralty Rule 4.1(A)

**WHEREFORE**, Cargill International S.A. prays that:

1. Its Verified Complaint be deemed good and sufficient;

2. Process in due form of law be issued pursuant to Rules B and C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, directing the *in personam* Defendant Sixthone Corporation to appear and answer, all and singular, the allegations contained herein and directing that the M/T PYXIS DELTA, presently lying afloat on the navigable waters of the United States of America within this District and the jurisdictional limits of this Court, be attached and arrested in the proceeding to the amount of Cargill International S.A.'s claims stated herein, plus interest, costs, and attorney's fees;

3. All parties claiming an interest, title or right in the said Vessel appear and answer, all and singular, the allegations of this Verified Complaint;

4. After due proceedings, Cargill International S.A. have judgment against Defendants, the M/T PYXIS DELTA, her engines, boilers, tackle, furniture, apparel, appurtenances, etc., *in rem,* and Sixthone Corporation, *in personam,* in

the full amount of Plaintiff's damages which are presently estimated to be no less than $183,226.60, and further interest thereon at the legal rate, and for any other and further amount that later calculation may demonstrate as being appropriate;

5. This Honorable Court enter a decree in favor of the Plaintiff and against Defendants for the total amount of Plaintiff's damages and that the M/T PYXIS DELTA be condemned and sold for the aforesaid amount together with reasonable costs and attorney's fees, including the costs and attorney's fees incurred herein;

6. Plaintiff have such other and further relief as the law and justice may require; and

7. Plaintiff agrees to release and hold harmless, and indemnify the United States of America, the United States Marshals Service, their agents, servants, employees, and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the arrest or attachment of the vessel.

Respectfully submitted,

*/s/ T. Patrick O'Leary*
Andrew S. de Klerk (LA 1045), T.A.
T. Patrick O'Leary (LA 30655)
Brandon K. Thibodeaux (LA 32725)
**FRILOT L.L.C.**
3700 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-3700
Phone:  504.599.8004
Fax:  504.599.8114
adeklerk@frilot.com
poleary@frilot.com
bthibodeaux@frilot.com
**Counsel for Plaintiff,
Cargill International S.A.**

**INSTRUCTIONS FOR U.S. MARSHALS SERVICE:**

PLEASE SERVE THE WARRANT OF ARREST /
WRIT OF FOREIGN ATTACHMENT
AND ARREST/ATTACH THE M/T PYXIS DELTA
AT THE VALERO TERMINAL IN MERAUX, LOUISIANA,
ABOUT MILE 87 AHP.